**Radley METZGER, d/b/a Audubon Films, Plaintiff-Appellee,**

v.

**Noble R. PEARCY, Prosecuting Attorney, 19th Judicial Circuit (Marion County); and Lee R. Eads, Sheriff of Marion County, Defendants-Appellants.**

No. 16578.

United States Court of Appeals Seventh Circuit.

April 29, 1968.

James A. Buck, Noble R. Pearcy, LeRoy New, Indianapolis, Ind., for defendants-appellants.

William P. Wooden, Henry J. Price, James E. Hughes, Indianapolis, Ind., for plaintiff-appellee, Barnes, Hickam, Pantzer & Boyd, Indianapolis, Ind., of counsel.

Before DUFFY, Senior Circuit Judge, and KILEY and SWYGERT, Circuit Judges.

DUFFY, Senior Circuit Judge.

This is an appeal from a preliminary injunction issued by Honorable S. Hugh Dillin, United States District Judge for the Southern District of Indiana, Indianapolis Division. This injunction directed the defendants and each of them to refrain from interfering with the exhibition of the moving picture "I, A Woman." The injunction also ordered the return to the plaintiff of four prints or films which had been seized.

Plaintiff is and was the owner of four prints of the motion picture "I, A Woman." Three of these films were being shown in outdoor movie theatres in Marion County, Indiana, and were seized on October 25, 1967, by officers of the Sheriff's department. The fourth film was being shown in an outdoor theater in Indianapolis. This film was seized on November 2, 1967, by members of the Indianapolis Police Department.

The four prints or films were seized without a warrant. Four persons were arrested in connection with the showing of the films. These arrests were also without warrants. Criminal prosecutions were instituted.

On November 13, 1967, Honorable William T. Sharpe, a Judge of the Municipal Court of Marion County, before whom three of the four criminal charges were pending, issued an order that the three films seized by the Sheriff's department be retained in the Police Property Room of the Indianapolis Police Department or by the Marion County Sheriff's Department.

The Chief of Police of the city of Indianapolis returned his copy of the

film to appellee's counsel. That film was not involved in the three cases pending before Judge Sharpe.

Two of the three films detained by the Sheriff are presently in the Sheriff's Property Room. The third copy was delivered to Attorney Price, counsel for appellee, to remain in Mr. Price's possession for viewing by proposed or intended witnesses, but to be returned immediately upon demand. However, since receiving Judge Dillin's order of November 13, 1967, Mr. Price has refused to return the film to the custody of the Sheriff.

On the hearing for a temporary injunction, defendants urged that they and their agents were justified in seizing the prints or films because the same were obscene within the meaning of Burns Indiana Stats.Anno., Sec. 10–2803. However, proof was made at the hearing that the movie in question had never been found to be obscene in any adversary proceedings.[1]

It is without dispute that prior to the seizure of the films, there had been no adversary determination by any court in Indiana on the question of whether the motion picture "I, A Woman" is obscene. Plaintiff-appellee claims that seizing the motion picture film prior to an adversary determination on the issue of obscenity is a violation of the First, Fourth and Fourteenth Amendments to the United States Constitution; and that motion pictures, like books, are protected by the constitutional guaranties of freedom of speech and press.

Plaintiff-appellee also urges that, unlike narcotics, gambling paraphernalia or burglary tools, a motion picture film and other First Amendment material cannot be seized as contraband.

Defendants-appellants strongly argue that when an officer has reasonable and probable cause to believe that a film is obscene, having viewed its entire public showing, and signs a criminal affidavit charging the appropriate crime, he has a right and duty to retain the film as evidence, pending disposition of the specific charge which he has brought.

Defendants-appellants also argue that if officers are forbidden to hold the seized material until a later determination regarding its obscenity, the laws proscribing obscenity are, in effect, obliterated in Indiana, for once the official loses his evidence, the state will lose its prosecution because there will be no continuity of evidence.

The principal case relied on by plaintiff is A Quantity of Copies of Books v. State of Kansas, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964) [Books]. In that case, only four Justices joined in the opinion of the Court. Justice Brennan was the author of the opinion in which the Chief Justice, Mr. Justice White, and Mr. Justice Goldberg joined. However, Mr. Justice Black and Mr. Justice Douglas joined in the judgment of reversal, but apparently they would have preferred to base the reversal in that case on the wide scope they had previously expressed as to the guaranty of freedom of speech and press contained in the First Amendment.

In *Books*, the state court judge held a 45-minute ex parte hearing in which he scrutinized the books, and then issued the warrant. The United States Supreme Court reversed saying: "We conclude that the procedures followed in issuing the warrant for the seizure of the books, and authorizing their impounding

---

1. The evidence taken before the District Judge showed that the motion picture "I, A Woman" had played in Maryland after passing the statewide Board of Censors of that state; that it also had played in Chicago after passing the Police Board of Censors in Chicago, with four deletions —which sections also were deleted from the film shown in Indianapolis and in Marion County. The film was an import and had passed the Bureau of Customs, which Bureau is charged with the responsibility of excluding obscene matter from the country.

There has been court determination in Boston, Massachusetts, Hartford, Connecticut, Providence, Rhode Island and Memphis, Tennessee that the motion picture "I, A Woman" is not obscene.

pending hearing, were constitutionally insufficient because they did not adequately safeguard against the suppression of nonobscene books." (378 U.S., at 208, 84 S.Ct. at 1724) The Court further stated: " * * * since P-K[2] was not afforded a hearing on the question of the obscenity even of the seven novels before the warrant issued, the procedure was likewise constitutionally deficient." (378 U.S. at 210, 84 S.Ct. at 1725).

We recognize that it has been established that motion pictures are protected by the constitutional guaranties of freedom of speech and press. Joseph Burstyn, Inc. v. Wilson, 343 U.S. 495, 72 S.Ct. 777, 96 L.Ed. 1098 (1952); Kingsley International Pictures Corp. v. Regents, 360 U.S. 684, 79 S.Ct. 1362, 3 L.Ed.2d 1512 (1959); Jacobellis v. State of Ohio, 378 U.S. 184, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964).

Defendants claim that if law enforcement officers are forbidden to hold the seized material until a later determination regarding its obscenity, the laws proscribing obscenity in Indiana become ineffective.

The decisions of this Court and of the District Court do not prohibit the prosecution under Indiana obscenity statutes. The District Court's injunction ordered that the plaintiff deliver to the defendant's prosecuting attorney, upon request of such defendant, one print of the film "I, A Woman" for his use in the trials of or in the preparation for the trials of the criminal cases involving such film now pending in the Municipal Court of Marion County, Indiana.

The question of obscenity of the motion picture "I, A Woman" is not before us.

However, we feel that we are bound by the opinion of the Supreme Court in *Books*. See also Marcus et al. v. Search Warrants of Property, 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961). The lesson of *Books* is that law enforcement officers cannot seize allegedly obscene publications without a prior adversary proceeding on the issue of obscenity. Such a seizure violates the First Amendment to the Constitution of the United States, and is a prior restraint condemned by the Supreme Court. In light of *Burstyn,* supra, *Kingsley Pictures,* supra and *Jacobellis,* supra these rules apply to motion pictures as well. Allegedly obscene publications or movies are not to be treated the same way as narcotics, gambling paraphernalia and other contraband. The legal rules governing the former are different from the latter. A Quantity of Copies of Books v. Kansas, 378 U.S. 205, 211–212, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964). This analysis requires this Court to hold unconstitutional the seizure of the film "I, A Woman" since there must be an adversary proceeding on the issue of obscenity before a movie can be constitutionally seized.

The judgment of the District Court appealed from herein is

Affirmed.

---

2. P-K refers to P-K News Service of Junction City, Kansas.