**SOUTHLAND THEATRES, INC., et al.,**
**Plaintiffs,**

v.

**Ted BUTLER, Criminal District Attorney of Bexar County, Texas, et al.,**
**Defendants.**

**Civ. A. No. SA72CA287.**

United States District Court,
W. D. Texas,
San Antonio Division.

Sept. 26, 1972.

J. Mack Ausburn, San Antonio, Tex., Frierson M. Graves, Jr., Memphis, Tenn., for plaintiffs.

Charles Albidress, Jr., Bill Harris, Asst. Criminal Dist. Attys., Bexar County, Tex., Max Flushe, Asst. Atty. Gen., Austin, Tex., Crawford Reeder, City Atty., San Antonio, Tex., for defendants.

### ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

SPEARS, Chief Judge.

This is a companion case to Sims v. Dial, 350 F.Supp. 747 (W.D.Tex.1972), in which an order denying motion for preliminary injunction was entered.

Plaintiffs here are corporations which operate three "adult" motion picture theaters in San Antonio, Texas. Defendants are the District Attorney of Bexar County, Texas, the judge of the 175th Judicial District Court of Bexar County, Texas, the Chief of Police of the City of San Antonio, the Chief of the vice bureau of the San Antonio Police Department, and the Attorney General of Texas (for purposes of notice only).

At the outset, it should be noted that although plaintiffs, in their complaint, ask for declaratory relief which, in some instances, would have the effect of holding certain portions of Article 527, Vernon's Ann.P.C. (Supp.1972) unconstitutional, and although they recite that they have made the Attorney General of Texas a party for notice purposes, as required by the "Three-Judge Court Statute," 28 U.S.C. § 2284, nevertheless, in their brief they state that they do not seek to have any State statute held unconstitutional, and their counsel also so stated in open court. That being the case, this Court has not passed upon the constitutionality of any Texas Statute, nor has notice been given to the Chief Judge of the Circuit that a three-judge court is required. 28 U.S.C. 2284. See Ex parte Bransford, 310 U.S. 354, 60 S. Ct. 947, 84 L.Ed. 1249 (1940).

The complaint in the instant case is similar, in many respects, to the complaint in the Sims case. Plaintiffs complain of the seizure of motion picture films and projection equipment on August 24, 1972, pursuant to warrants issued on that date. The warrants were issued at the hearing before the defendant, Judge Dial, which was discussed in the Sims case. The circumstances surrounding the issuance of the warrants are virtually identical with those in the Sims case. As in Sims, the warrants were issued solely on the basis of affidavits presented to Judge Dial. The officers who had made the affidavits were present, as was counsel for the plaintiffs. As in Sims, plaintiffs declined to offer evidence.

Plaintiffs raise many of the same objections concerning the issuance of the warrants and the conduct of the hearing as were raised in the Sims case. In light of the Court's disposition of those objections in that case, it is not necessary to discuss them further.

In addition to the objections raised in the Sims case, plaintiffs argue that the

arrests of certain of their employees were unauthorized because: (1) the "appeal" provision of Article 527 § 9(h) does not permit arrests to be made under the statute until after the expiration of ten days after the date the warrants were issued, and (2) Article 527 § 2 exempts certain employees from criminal liability under the Act.

Without expressing a view as to the merits of these assertions, this Court will merely state that the existence of an absolute or affirmative defense under state law to a state criminal prosecution is not, in itself, sufficient to justify federal injunctive relief. Under no stretch of the imagination could the arrest of a person found in control of premises where the materials were found rise to the level of bad faith or "extraordinary circumstances" merely because that person may have a valid, affirmative defense, or may be entitled to a later review of the arrest. Arrests are made upon probable cause, not upon a final determination of guilt. The arrest of persons found in control of premises where motion pictures, previously determined as being obscene, are being or have been exhibited certainly does not indicate any action other than an arrest upon probable cause.

As in the *Sims* case, plaintiffs have not shown, with respect to the August 24th seizures, the requisite bad faith and harassment or "extraordinary circumstances" required by the holding in Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) to be shown before equitable relief may be granted.

In addition to the August 24th seizures, however, plaintiffs also complain of several arrests and/or seizures which were made during the period beginning on June 10, 1971 and ending on June 8, 1972.

On June 10, 1971 and August 6, 1971, search warrants were issued at an ex parte proceeding on the basis of affidavits, directing the seizure of certain motion picture films, the equipment used in exhibiting them, and the arrest of persons having control of the premises or the articles at the time of the execution of the warrants. The warrants were executed on the days on which they were issued, and the films named in the warrants were seized, along with, in some cases, other films. After the seizures and arrests, adversary hearings on the issue of obscenity were held before the magistrates who had issued the warrants.

On September 17, 1971, an officer of the San Antonio Police Department purchased a book from a bookstore located in the lobby of one of plaintiffs' theaters. After consulting with another officer outside the theater, the officer concluded that the book met the test of obscenity which he had been instructed to apply by his superiors. The officers then re-entered the bookstore, arrested the person who had sold the book to the officer, and seized one copy of each book which was offered for sale (approximately 150, although some duplications may have occurred) and one copy each of several eight millimeter motion picture films which were offered for sale (approximately 20 films). Subsequently, upon motion of an Assistant District Attorney, a hearing was held on October 1, 1971, on the issue of the obscene character of the materials seized. At this hearing, at which plaintiffs' arrested employee was represented by counsel, it was determined that certain of the materials seized were not obscene and were returned to plaintiffs, although the major portion of the materials were retained.

On November 19, 1971, certain films and motion picture projectors were seized pursuant to a warrant issued in essentially the same manner as the June 10th and August 6th warrants. On November 23, 1971, a hearing was held at which the return of the projectors was ordered.

On several occasions during the period mentioned, police officers, after having purchased books from plaintiffs' bookstores, and determining that the books were obscene, arrested, without warrant, the employees who had sold the book or books. The last such arrest occurred on

June 8, 1972, at which time several books and other articles were also seized.

The evidence adduced at the hearing on plaintiffs' motion for preliminary injunction indicated that the officers were relying on instructions from their superiors in making the seizures and arrests, and that their superiors were following instructions they had received from the District Attorney's office.

The Assistant District Attorney who directed the seizures up to and including the June 8, 1972 seizure, testified that it was his belief that a prior adversary hearing was not required *before* the issuance of a search warrant, except in cases of massive seizures. He testified that he relied upon the holding in United States v. Thirty-Seven Photographs, 402 U.S. 363, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971), for the proposition that the adversary hearing need not be held *before* the seizure, and upon the holdings in cases such as United States v. Fragus, 428 F.2d 1211 (5th Cir.1970) and Milky Way Productions, Inc. v. Leary, 305 F. Supp. 288 (S.D.N.Y.1969) aff'd sub nom., mem., New York Feed Company, Inc. v. Leary, 397 U.S. 98, 90 S.Ct. 817, 25 L.Ed.2d 78 (1970) for the proposition that arrests for violations of obscenity laws may be made without a prior judicial determination of obscenity. Similarly, language contained in United States v. Fragus, *supra*, citing United States v. Wild, 422 F.2d 34 (2nd Cir. 1969) cert. denied, 402 U.S. 986, 91 S.Ct. 1644, 29 L.Ed.2d 152 (1971), and Milky Way Productions, Inc. v. Leary, *supra*, led him to believe that the requirement that an adversary hearing be held prior to seizure was applicable only to large scale, as opposed to evidentiary seizures. Likewise, it was thought that the provisions of the revised version of Article 527 V.A.P.C. (Supp.1972), by virtue of § 9(j)[1] of said article, did not apply to seizures made pursuant to an arrest.

The change in procedure which was evident in the August, 1972 seizures (wherein a prior adversary hearing was held) was the result of another Assistant District Attorney taking charge of the prosecutions.

██ ██ While the Court recognizes that the beliefs of the Assistant District Attorney who testified run contrary to a great number of holdings, including this Court's holding in Fontaine v. Dial, 303 F.Supp. 436 (W.D.Tex.1969) (Three-Judge Court), nevertheless, the Court does not find evidence of bad faith or harassment. Although this Court does not accept the proposition that a violation of firmly established decisional law constitutes, in itself, bad faith as a matter of law, the state of the law and the local official's cognizance thereof are certainly of evidentiary value. In the instant case, the presence of case law which lends support to the legality of the actions taken, coupled with the absence of evidence of ulterior motives or misconduct such as were present in Krahm v. Graham, 461 F.2d 703 (9th Cir. 1972), lead this Court to conclude that the seizures, arrests, and prosecutions were not undertaken in bad faith.

██ This Court readily recognizes the axiomatic proposition that a good faith belief on the part of local officials, no matter how sincere, does not vitiate illegality. It should be emphasized, however, that the ultimate validity of the seizures, arrests, and prosecutions are not here in issue. The only issues before the Court are whether the prosecutions have been undertaken in bad faith and for purposes of harassment, or whether "extraordinary circumstances" sufficient to justify equitable relief in the absence of a showing of bad faith and harassment, are present. Younger v. Harris, supra.

---

1. Art. 527 § 9(j) provides: "Procedures under this section for the seizure of allegedly obscene matter shall be cumulative of all other lawful means of obtaining evidence as provided by the laws of this State. Nothing contained in this section shall prevent the obtaining of alleged obscene matter by purchase or under injunction proceedings as authorized by this Act or by any other statute of the State of Texas."

This Court is of the opinion that the actions here taken do not represent "extraordinary circumstances." Plaintiffs were afforded a judicial determination of the issue of obscenity, either immediately after or soon after the seizures occurred. While this fact may not be sufficient to make the seizures legal, it demonstrates that plaintiffs have not been dealt with in such a way as to deprive them totally of judicial redress or protection. Secondly, in light of the somewhat unsettled area of the law in this area,[2] this Court is reluctant to hold that the procedures followed in this case rise to the level of "extraordinary circumstances."

There being no evidence that the instant prosecutions were undertaken in bad faith and for purposes of harassment, and in the absence of other "extraordinary circumstances" justifying injunctive relief, plaintiffs motion for preliminary injunction is denied.

2. See Bryers v. State, 480 S.W.2d 712, 715 nn. 3 & 4, (Tex.Cr.App.1972), for a survey of recent, conflicting decisions.